UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIANA D. CORNICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:17-CV-1265-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Deputy Commissioner of Operations, Social Security Administration (the "Commissioner"), denying the application of Plaintiff Melissa R. Cody ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On June 3, 2014, Plaintiff applied for DIB, alleging that she had been unable to work since May 1, 2011. (Tr. 124, 190-97). Her application was initially denied. (Tr. 124-28). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 129-30). Plaintiff also amended her alleged onset date to November 6, 2012. (Tr. 213). On May 4, 2016, following a hearing, the

1

ALJ issued a decision finding Plaintiff not disabled. (Tr. 47-71). On February 13, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

At the hearing before the ALJ, held on March 1, 2016, Plaintiff testified as follows. She has worked in the past in medical supply sales and as a hospital receptionist. (Tr. 79-80). She testified that the most serious health problem she has that interferes with her ability to work is pain in her feet. (Tr. 83). She stated that at home she is typically either in a recliner or in bed and that if she sits too long, the pain radiates from her back down to her feet. (Tr. 83). She also testified that her medications cause confusion. (Tr. 83). She has had surgeries on her foot and has tried several different medications. (Tr. 85-86). Plaintiff believes her chronic pain has brought on depression, for which she takes Paxil. (Tr. 86, 88). Plaintiff testified that she can stand for maybe five minutes and can walk comfortably for about half a block. (Tr. 89). She testified that because of back pain, she cannot bend to pick up items. (Tr. 89). She can sit for about 25 minutes. (Tr. 90). Her husband does the household chores. (Tr. 90).

With regard to Plaintiff's work history and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts relevant to the issues presented in the parties' briefs, as needed, in the discussion section below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled

a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step procedure, the ALJ here found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017; that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of November 6, 2012, through the date of the ALJ's May 4, 2016 decision; that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, status-post spinal cord

stimulator trial, neuroma of the bilateral feet status-post surgeries, and status-post bunion surgery." (Tr. 52). The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 56). The ALJ found that claimant had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she could do no climbing of ladders, ropes, or scaffolds; could continuously balance; and could occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl. (Tr. 56). Relying on the testimony of a vocational expert, the ALJ found Plaintiff was capable of performing her past relevant work as a medical secretary (*Dictionary of Occupational Titles* No. 237.367-038). (Tr. 66). Thus, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from November 6, 2012, through the date of his decision. (Tr. 67).

## IV. DISCUSSION

Plaintiff raises two arguments in support of her claim: (1) that the ALJ erred by failing to find that Plaintiff's depression was a severe impairment and by failing to include mental limitations in the RFC; and (2) that the ALJ erred by failing to give adequate weight to the opinion of Plaintiff's treating physician, Dr. Gorrell.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*,

5

572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Assessment of Plaintiff's Depression

Plaintiff's first argument is that the ALJ erred by not finding Plaintiff's depression to be a severe impairment at Step Two of the analysis. Plaintiff also appears to argue that the ALJ erred by failing to include any mental limitations in the RFC. The Court finds both arguments to be without merit.

To be considered severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). *See also* Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Additionally, to support a finding of disability, a severe impairment must have lasted or must be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Eighth Circuit has noted that "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [it has] upheld on

numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* at 708 (citation omitted).

In determining the severity of a claimant's mental impairments at Step Two, the ALJ must use the "special technique" described in 20 C.F.R. § 404.1520a (2011).[1] The ALJ must first "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1) (2011). The ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* § 404.1520a(b)(2) & (c)(3). If the degree of limitation in the first three functional areas is rated as "none" or "mild" and the rating in the fourth area is "none," the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

The ALJ performed that analysis in this case, and his analysis was supported by substantial evidence. (Tr. 54-55). With regard to activities of daily living, the ALJ found only a mild limitation, reasonably noting that her most of her reported limitations in activities of daily living were related to her allegations of pain rather than mental impairments. (Tr. 55, 268-75). With regard to social functioning, the ALJ found only mild limitation, noting that Plaintiff denied any issues getting along with family, friends, neighbors, or others; reported attending church and sometimes going out for lunch; and reported spending time with her daughters, with her limitations on those activities being physical. (Tr. 55, 272-73). With regard to concentration, persistence, or

---

[1] The Court's references in this section are to the version of the regulations that was in effect as of the date of the ALJ's decision.

pace, the ALJ found only mild limitations, noting that although Plaintiff reported not handling stress well, she also reported having no problems handling changes in routine. (Tr. 55, 274). She also reported having no problems completing tasks, understanding, or following instructions. (Tr. 273). She reported being able to drive, pay bills, and handle a savings account, and pay attention for an hour. (Tr. 271, 273). The ALJ also noted that in a psychological evaluation conducted in October 2013 by Dr. Beverly Field, before Plaintiff received a trial of a spinal cord stimulator, Plaintiff was found to have normal mental status examination findings, including findings of normal attention/concentration; intact memory; a euthymic affect; and logical and goal-directed thought processes. (Tr. 55, 332). The ALJ also reasonably found that Plaintiff had experienced no episodes of decompensation that have been of extended duration. (Tr. 55). He therefore concluded that Plaintiff's depression was not severe. (Tr. 55). As discussed below, this analysis is also supported by the opinion of a state agency reviewing psychologist, as well as by several additional records showing normal mental status examination findings and improvement with treatment. The undersigned finds no error in this analysis.

Moreover, even assuming, *arguendo*, that the ALJ erred in finding Plaintiff's mental impairments not severe at Step Two, that error does not require remand because it is harmless. Courts frequently find that an ALJ's error at Step Two in failing to find a particular impairment severe does not require reversal where the ALJ finds other severe impairments and considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis. *See Spainhour v. Astrue*, No. 11–1056–SSA–CV–W–MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."); *Givans v. Astrue*,

No. 4:10–CV–417–CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the plaintiff's RFC). *See also* 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Here, the ALJ considered all of Plaintiff's limitations, including her mental impairments, in his analysis after Step Two. Specifically, in assessing Plaintiff's RFC, the ALJ specifically discussed the testimony, opinion evidence, and medical records related to her mental impairments and concluded that her mental impairments did not require the inclusion of additional limitations in the RFC. (Tr. 57-66).

The Court also finds that the ALJ's decision not to include any mental limitations in the RFC is supported by substantial evidence. First, the ALJ's conclusion is supported by the October 2013 psychological evaluation of Dr. Beverly Field, Ph.D., which the ALJ discussed at length and gave "significant weight." (Tr. 54, 331-33). In October 2013, Dr. Field conducted a psychological examination of Plaintiff. (Tr. 331-33). Dr. Field noted that Plaintiff was alert and oriented, seemed to be a reliable historian, had a memory intact for history, had normal attention/concentration, was neatly groomed, had normal motor activity and good eye contact, had normal speech, had logical and goal-directed though processes, had no delusions or hallucinations, had no suicidal ideations, and had a euthymic mood. (Tr. 332). In describing Plaintiff's mood, Dr. Field noted that Plaintiff had stated, "I have peace." (Tr. 332). Plaintiff told Dr. Field that she had always been "high strung" and noted a history of anxiety and irritability; she also noted that she was being prescribed Prozac

and Xanax by her primary care physician. (Tr. 332). Dr. Field noted that Plaintiff had denied a significant psychiatric history but that Plaintiff noted a history of anxiety and irritability treated with Prozac and Xanax. (Tr. 332). Dr. Field noted that there was "no evidence of significant depression or anxiety from interview." (Tr. 332). Dr. Field diagnosed anxiety disorder NOS and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 80, indicating only a slight impairment in occupational functioning. [2]

Second, the ALJ's conclusion is supported by the November 2014 opinion of non-examining state agency psychological consultant Stanley Hutson, Ph.D., which the ALJ gave "significant weight." (Tr. 66, 117-19). Dr. Hutson reviewed Plaintiff's medical records and found that Plaintiff had medically determinable impairments that included affective disorders and anxiety-related disorders. (Tr. 117-18). However, he also found that Plaintiff had only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (Tr. 118). He concluded that "[c]urrent objective findings do not suggest significant limitations as a result of a mental health impairment." (Tr. 119).

Third, the ALJ's conclusion also has support in the medical records, which show that although Plaintiff was diagnosed with depression and often had emotional lability and/or tearfulness at several of her medical appointments, Plaintiff frequently had normal mental status

---

[2] A Global Assessment of Functioning ("GAF") score is based on "the clinician's judgment of the individual's overall level of functioning." *Hudson v. Barnhart*, 345 F.3d 661, 662 n.3 (quoting *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000) ("*DSM-IV-TR*"). A GAF score of 71 to 80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." *DSM-IV-TR* 34.

examinations and/or normal mood and affect (Tr. 53-54, 321, 325, 332, 335, 340, 345, 351, 409, 414, 447, 493, 500, 506). These records also show that Plaintiff reported "doing a lot better" on Paxil in June 2015 (Tr. 507) and that Plaintiff's physician characterized Plaintiff's depression as "fairly well controlled considering the circumstances" in October 2015. (Tr. 54, 480). To the extent that Plaintiff's condition was controlled by medication, it cannot be considered disabling. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

Fourth, the ALJ's conclusion is supported by Plaintiff's own reports regarding her daily activities, which show that she had no problems getting along with family, friends, neighbors, or others; following instructions; paying attention for up to an hour; or handling changes in routine. (Tr. 271-74).

Plaintiff suggests that the RFC should have included additional limitations based on Plaintiff's emotional lability and tearfulness at her medical appointments. The Court acknowledges that Plaintiff was often noted to be tearful at her medical appointments. (Tr. 14, 472, 479, 493, 499-500, 506). However, the ALJ discussed the records showing Plaintiff's tearfulness along with the other evidence in the record and concluded that Plaintiff's emotional lability did not require the inclusion of limitations in the RFC. The Court cannot say that the ALJ's weighing of the evidence was unreasonable. The fact that Plaintiff was often tearful at her medical appointments, when discussing her physical pain and mental problems, does not necessarily indicate that she would be similarly emotionally labile in a work situation.

In sum, in light of the opinion evidence from Dr. Field and Dr. Hutson, combined with the medical records containing frequent normal status examinations, the Court finds that the ALJ's evaluation of Plaintiff's mental functioning is supported by substantial evidence.

For all of the above reasons, Plaintiff's first argument does not warrant remand.

### C. The ALJ's Evaluation of the Opinions of Plaintiff's Treating Physician, Dr. Rachelle Gorrell

Plaintiff's second argument is that the ALJ erred by affording no weight to the opinions of Dr. Gorrell, Plaintiff's treating physician. On October 1, 2015, Dr. Gorrell completed a "Medical Source Statement—Physical" for Plaintiff. (Tr. 482-44). Dr. Gorrell stated that Plaintiff's diagnoses were neuropathy in both feet; neuromas in both feet, status post-numerous surgeries; degenerative disc disease of the lumbar spine; and chronic back pain. (Tr. 482). She opined that in order to control Plaintiff's existing pain or fatigue, it would be necessary for Plaintiff to assume a reclining position for up to 30 minutes, one to three times a day and assume a supine position for up to 30 minutes, one to three times a day. (Tr. 482). She opined that Plaintiff could sit for only 15 minutes at one time and in a total workday for two hours without pain; could stand for less than five minutes at one time without pain; could stand for less than one hour total in a workday without pain; could frequently lift up to 10 pounds; and could occasionally lift and carry up to 15 pounds. (Tr. 482-83). She opined that Plaintiff would miss more than two days of work per month due to pain, fatigue, or other medical issues and would miss at least 15 percent of an eight-hour workday due to unscheduled work breaks. (Tr. 483). She also opined that Plaintiff could occasionally balance and could never climb, stoop, kneel, crouch, or bend. (Tr. 483). She opined that Plaintiff had unlimited ability to handle and finger but limited ability to reach. (Tr. 484). Dr. Gorrell also

opined that Plaintiff was "unable to maintain steady employment and her condition is not expected to improve." (Tr. 480).

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[3] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). However, a treating physician's opinion is not inherently entitled to controlling weight. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Goff*, 421 F.3d at 790 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ may also "discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and

---

[3] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c.

extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir.2007)). It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

As a preliminary matter, the Court notes that although the ALJ stated that he was giving "no weight" to Dr. Gorrell's opinion, the ALJ partially accounted for Dr. Gorrell's opinion that Plaintiff had significant limitations in the ability to stand, walk, lift, and carry by limiting Plaintiff to sedentary work. (Tr. 56). Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). As the Eighth Circuit has recognized, a limitation to sedentary work "in itself is a significant limitation." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). The ALJ also imposed additional limitations, finding that Plaintiff could not climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl.

To the extent that the ALJ did discount Dr. Gorrell's opinions, the Court find that the ALJ gave good reasons, supported by substantial evidence, that brought the ALJ's decision within the available "zone of choice." First, with regard to Dr. Gorrell's opinion that Plaintiff was unable to maintain steady employment, the ALJ properly noted that that a treating physician's opinion that a claimant is "disabled" or "unable to work" is not a "medical opinion" that is entitled to credit

14

under the regulations, because it is an opinion on a question reserved to the Commissioner. (Tr. 62). *See Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely 'opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'") (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019, 1023 (8th Cir. 2002)). *Accord Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

Second, the ALJ also reasonably noted that Dr. Gorrell's opinions were entitled to less weight because they were based primarily upon Plaintiff's subjective complaints of foot and back pain. (Tr. 62). The Eighth Circuit has repeatedly found it appropriate for an ALJ to discount a doctor's report where it is based largely on a claimant's subjective complaints. *See Renstrom*, 680 F.3d at 1064 (citing *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)). *See also Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014).

Third, the ALJ also reasonably found that Dr. Gorrell's opinions were not fully supported by the clinical findings in her own treatment notes. (Tr. 63). The ALJ also noted that although Dr. Gorrell noted some tenderness over the feet and spine, Dr. Gorrell generally reported minimal objective musculoskeletal and neurological findings, and that those findings were often normal (including findings of normal strength, reflexes, and ranges of motion in her legs). (Tr. 60, 62, 408, 414, 438, 442, 447, 479, 493, 499-500, 506, 507). For example, in October 2015, at the same time as she opined that Plaintiff could only sit for 15 minutes at a time (presumably due to her back pain). Dr. Gorrell found Plaintiff had only mild tenderness to palpation in the lower back and had a negative straight leg raise test bilaterally. (Tr. 62, 479). *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

15

Fourth, the ALJ found the extreme limitations in Dr. Gorrell's opinion inconsistent with Dr. Gorrell's June 2014 note indicating that although Plaintiff could "no longer work on her feet," Dr. Gorrell discussed with her the possibility of doing "desk type jobs" and "working from home." (Tr. 62, 402). It was not unreasonable for the ALJ to find that Dr. Gorrell's suggestion of "desk type jobs" reasonably indicated a belief that Plaintiff's difficulties with standing and walking could be accommodated by work that primarily involved sitting. Plaintiff argues that the Court cannot assume that Dr. Gorrell intended to indicate that Plaintiff could perform sedentary work on a full-time basis. The Court agrees that Dr. Gorrell was not necessarily indicating that Plaintiff could perform full-time work. However, it was not unreasonable for the ALJ to find that Dr. Gorrell's suggestion of "desk-type jobs" was at least somewhat inconsistent with her later opinion that Plaintiff could not even sit for more than 15 minutes at a time or for two hours total in an eight-hour workday. The ALJ did not err considering this along with several other relevant factors in discounting Dr. Gorrell's opinion.

Fifth, the ALJ found Dr. Gorrell's opinions inconsistent with the findings and opinions of the consultative examiner, Dr. Williamson. In November 2014, Dr. Williamson found that Plaintiff had normal ranges of motion; was in no acute distress; had no cyanosis, clubbing, or edema in her extremities; had normal gait and station, did not favor one leg, and did not need an assistive device; had normal muscle bulk and tone and strength that was 4/5 or 5/5; had no swelling, erythema, effusion, crepitus, tenderness, deformity, or laxity in her joints (including ankles and feet) except for tenderness on the feet under the metatarsal head bilaterally; was able to stand on her heels, stand on her toes, stand on one foot, and hop on one foot bilaterally with some difficulty; had back weakness but no decreased range of motion in the back; and had a sensory examination intact to light touch throughout. (Tr. 467-73). Dr. Williamson opined that Plaintiff could sit continuously;

could stand and walk frequently (limited by foot tenderness and lower extremity weakness); could lift and carry up to 20 pounds frequently (limited by upper extremity weakness); could reach, handle, and finger frequently (limited by upper extremity weakness); could kneel, crouch, or crawl occasionally (limited by lower extremity weakness and foot tenderness); could balance continuously; could climb steps and ladders occasionally but might need extra arch support to climb a ladder; could see and speak without limitations; and could tolerate heat, cold, and vibration without limitations. (Tr. 474). The ALJ reasonably gave "considerable weight" to the opinions of Dr. Williamson, finding they were generally consistent with his own generally unremarkable examination findings, with other unremarkable examination findings in the record, and with Plaintiff's reports that her daily activities included shopping, caring for pets, and getting outside daily in the summer. (Tr. 63, 260, 269-71, 412, 497).

Plaintiff contends that the ALJ should have given less weight to Dr. Williamson's findings because he did not review her medical records. Although this factor would have been a relevant consideration, *see* 20 C.F.R. § 404.1527(c)(6) (noting "the extent to which a medical source is familiar with the other information in your case record" as a relevant factor), the ALJ is not required to explicitly discuss every factor in weighing a medical opinion. *See Areno v. Colvin*, No. 4:12-CV-1669-DDN, 2013 WL 5291754, at *12 (E.D. Mo. Sept. 19, 2013). Moreover, Dr. Williamson's opinion indicates that he was familiar with Plaintiff's medical history as recounted by Plaintiff; he discussed, *inter alia*, her reports of multiple foot surgeries, her degenerative disc disease and pain, her prior physical therapy, the history of her pain, and her some of her MRI and X-ray findings. (Tr. 469-70). The ALJ did not err in discounting Dr. Gorrell's opinion in part because he found Dr. Williamson's assessment was better supported by the evidence. *See Renstrom*, 680 F.3d at 1064 ("An ALJ may discount or even disregard the opinion of a treating

physician where other medical assessments are supported by better or more thorough medical evidence . . . ."). (quotation marks omitted).

The Court acknowledges that the record contains conflicting evidence, including medical opinion evidence, regarding the extent of Plaintiff's physical limitations, some of which would support limitations greater than those assessed by the ALJ. However, "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom*, 680 F.3d at 1065 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). It is not the role of this Court to reweigh the evidence presented to the ALJ. *Id.* The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

V.     CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of September, 2018.